Sterling A. Brennan (California SBN 126019)
 E-Mail: sbrennan@mabr.com
Robert T. Stewart (California SBN 330308)
 E-Mail: rstewart@mabr.com
MASCHOFF BRENNAN
100 Spectrum Center Drive, Suite 1200
Irvine, California 92618
Telephone: (949) 202-1900
Facsimile: (949) 453-1104

David R. Wright (*Pro Hac Vice forthcoming*)
 E-Mail: dwright@mabr.com
Maren Laurence (*Pro Hac Vice forthcoming*)
 E-Mail: mlaurence@mabr.com
MASCHOFF BRENNAN
111 South Main Street, Suite 600
Salt Lake City, Utah 84111
Telephone: (801) 297-1850
Facsimile: (435) 252-1631

Attorneys for Plaintiff ESC-Toy Ltd.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESC-TOY LTD., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>INSOMNIAC GAMES, INC., a California corporation,<br><br>Defendant. | Case No. 2:21-CV-02139-JVS-GJS<br><br>**PLAINTIFF ESC-TOY LTD.'S OPPOSITION TO DEFENDANT INSOMNIAC GAMES, INC.'S MOTION FOR COSTS UNDER FRCP 41(d)**<br><br>District Judge: Hon. James V. Selna<br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL** |

**TABLE OF CONTENTS**

I. Introduction ..........................................................................................................1

II. Facts .....................................................................................................................2

III. Argument .............................................................................................................5

    1.    Legal standard ..............................................................................................5

    2.    The court should deny Insomniac's motion for costs because ESC acted reasonably and legitimately and did not engage in vexatious litigation or forum shopping. ......................................................................................................6

        A.    Filing a subsequent action that includes the similar claims against the same defendant alone is insufficient to recover costs under Rule 41(d). ...........................................................................................................6

        B.    The Nevada Action was brought in ESC's home forum and Insomniac was dismissed before any substantive matters took place ........9

    3.    Insomniac should not be awarded its claimed fees incurred from the Nevada Action because its fees are not rendered useless by the dismissal, were clerical in nature, and were a result of self-imposed and unnecessary litigation. ............................................11

IV. Conclusion .........................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*Barnes & Noble, Inc. v. LSI Corp.*,
   823 F. Supp. 2d 980 (N.D. Cal. 2011) ...................................................... 7, 9, 11

*Cohen v. Aetna Life Ins. Co.*,
   2021 WL 2070205 (C.D. Cal. May 18, 2021) .................................................. 12

*Data Scape Ltd. v. Spotify USA Inc.*,
   2019 WL 7905898 (C.D. Cal. Dec. 3, 2019) ..................................................... 5, 6

*ESC Toy Ltd. v. Sony Interactive Entertainment LLC and Insomniac Games, Inc.*,
   Case No 2:20-cv-00726-GMN-VCF ................................................................... 3

*Esquivel v. Arau*,
   913 F. Supp. 1382 (C.D. Cal. 1996) ........................................................ *passim*

*Jadwin v. Country of Kern*,
   767 F. Supp. 2d 1069 (E.D. Cal. 2011) .............................................................. 12

*Nuance Commc'n, Inc. v. Abbyy Software House*,
   2008 WL 11383775 (N.D. Cal. Sept. 29, 2008) ................................................. 11

*Pereira v. 3072541 Canada Inc.*,
   2018 WL 5824889 (C.D. Cal. July 5, 2018) ........................................................ 5

*Sleep No. Corp. v. Sizewise Rentals*,
   No., 2018 WL 5263064 (C.D. Cal. June 26, 2018) ..................................... *passim*

*Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Assoc.*,
   2016 WL 11506718 (C.D. Cal. Oct. 31, 2016) ............................................... 5, 9

**Other Authorities**

Fed. R. Civ. P. 41(a) ................................................................................................ 4

Fed. R. Civ. P. 41(d) ...................................................................................... *passim*

## I. INTRODUCTION

The motion by Defendant Insomniac Games, Inc. ("Insomniac") for the award of costs in the short-lived Nevada case should be denied. Plaintiff ESC-Toy Ltd. ("ESC") brought the initial case against Insomniac in the District of Nevada ("Nevada Action") on April 22, 2020. ESC based its claims in the Nevada Action on conduct that occurred in Nevada because Nevada is ESC's home forum. But shortly after commencing the Nevada Action, ESC dismissed Insomniac from the Nevada Action two weeks before Insomniac's response to the complaint was even due. Recognizing the forum selection clause in the written contracts with Insomniac, ESC then brought this suit in this District.

Rule 41(d) of the Federal Rules of Civil Procedure permits broad discretion for district judges to order stays and payment of costs or fees, meaning *neither order is mandatory*. The award of costs or attorneys' fees is an extreme remedy. In those cases where fees or costs have been awarded, the plaintiff was found to have engaged in forum shopping or vexatious litigation, such as attempting to evade a pending motion to dismiss. Insomniac's motion makes no argument — let alone a showing — of any such conduct by ESC.

To support the denial of the motion, ESC first explains that the substance of the two complaints is not identical. Unlike in the Nevada Action, in this case ESC presented over 15 different and new examples of Insomniac's breach. Second, ESC explains why its actions were legitimate and did not rise to a level of vexatious litigation when it became clear this Court was the proper forum due to the contracts forum selection clauses. Rather than engage in a prolonged battle to keep its case pending in the District of Nevada, ESC promptly dismissed Insomniac in the Nevada Action and sued Insomniac in this Court. Therefore, there is no evidence of forum shopping or vexatious litigation by ESC.

Even assuming arguendo that Insomniac's motion had any merit, the amount of fees it seeks is improper. The only fees that could be recovered are those for the preparation of work product that was rendered useless by the dismissal of the Nevada

1  Action. Courts have determined that fees incurred by preparing motions to dismiss are
2  generally not recoverable because they can still be useful in a new district, especially if
3  the cases have overlapping claims. Courts also do not award clerical and administrative
4  fees or costs that are unnecessary, excessive, self-imposed, or avoidable. Insomniac
5  claims that after it was dismissed from the Nevada Action, ESC refused to amend the
6  complaint in the Nevada Action to delete the breach of contract claim against Insomniac.
7  But ESC actually agreed to remove the claim against Insomniac if Sony (who shared the
8  same counsel as Sony) stipulated that the amendment would not constitute ESC's one and
9  only amendment as a matter of right. Sony refused ESC's proposal, and thus Insomniac's
10 subsequent motion to strike was unnecessary, excessive, self-imposed, and avoidable.
11 Courts have denied these types of fees from being recoverable.
12    For these reasons, the Court should deny Insomniac's motion for costs under Rule
13 41(d).

## II.   FACTS

15 ESC is a Nevada corporation with its principal place of business at 6625 South
16 Valley View Boulevard, Suite 326, Las Vegas, Nevada 89118. *See* Compl. ¶ 1, ECF. No.
17 28. ESC is a premier, award-winning brand management and development company that
18 provides collectible merchandising works in the gaming and entertainment industries.
19    On May 1, 2018, ESC entered into the Fulfillment Agreement and Product
20 Procurement Agreement ("Procurement Agreement") with Insomniac. *See* Compl. ¶ 13.
21 Under the terms of the Procurement Agreement, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1  ESC produced and sold merchandise for Insomniac from ESC's Nevada-based
2  location. Then Insomniac breached the Procurement Agreement ███████████
3  ████████████████████████████████████████████████████████████████████████
4  ████████████████████████████████████████████████████████████████████████
5  ███████████████████ *Id.* ¶¶ 13-17, 20, 23, 28, 31, 33, 36, 40, 45, 49, 53, 56, 59.

After Insomniac breached the contracts, ESC filed suit in the District of Nevada on April 22, 2020, against Insomniac and Sony Interactive Entertainment, which is Insomniac's parent company. The case was captioned as *ESC Toy Ltd. v. Sony Interactive Entertainment LLC and Insomniac Games, Inc.*, Case No 2:20-cv-00726-GMN-VCF. *See* Complaint in Nevada Action ("Nevada Complaint"), ECF No. 1.[1] ESC's claims against Sony — namely, breach of oral contract, unjust enrichment, breach of implied covenant of good faith and fair dealing, and breach of written contract — were based on separate facts than the claims against Insomniac. Nevada Compl. ¶¶ 102-128. ESC's claims against Insomniac were based on Insomniac's alleged breach of the Procurement Agreement and Fulfillment Agreement. *Id.* ¶¶ 129–134. In the Nevada Complaint, unlike in this case's complaint, ESC only presented three examples of Insomniac's breach, and those examples only featured the *Marvel Spider-Man* merchandise. *Id.* ¶¶ 96–101.

ESC alleged in the Nevada Action that the "court has personal jurisdiction over Insomniac because Insomniac engaged in acts of wrongful conduct, described herein, in this judicial district [District of Nevada]" and ESC resides in the District of Nevada. *Id.*, ¶ 8.

After being served with ESC's Complaint, Insomniac requested an extension to respond, to which ESC agreed. Accordingly, on May 11, 2020, ESC filed a "Stipulation to Extend Time to Answer or Otherwise Answer the Complaint." Nevada Action, ECF

---

[1] The publicly available version of the complaint was later sealed. A copy of the complaint in District of Nevada case (Case No. 20-cv-1645), which is now a Northern District of California case (Case No. 3:21-cv-00778), is in the record in this case at ECF No. 54-1 as Exhibit A to the Declaration of Karineh Khachatourian.

1    No. 12.² Through the stipulation, ESC agreed to an extension of time for both Sony and
2    Insomniac³ to respond until June 12, 2020. *Id.* at 2. Ten days before Insomniac's response
3    deadline, on June 2, 2020, ESC dismissed Insomniac without prejudice pursuant to Fed.
4    R. Civ. P. 41(a)(1)(A)(i) in light of the venue provisions in the contracts. Nevada Action,
5    ECF No. 19.⁴ Between the submission of the stipulated extension of time and ESC's
6    voluntary dismissal, the only case activity was the admission of Sony's and Insomniac's
7    counsel *pro hac vice* (the same counsel for Sony and Insomniac). Nevada Action, ECF
8    No. 16–18.⁵ ESC agreed to remove Insomniac from the Nevada Action on the condition
9    that Sony stipulate that such removal would not constitute ESC's one amendment as a
10   matter of right. Nevada Action, ECF No. 42 at 16–17.⁶ Sony and Insomniac rejected
11   ESC's reasonable condition and filed a motion to strike instead, wasting the Nevada
12   court's resources over a dispute on a moot issue because Insomniac had already been
13   dismissed. *Id.*
14        After the voluntary dismissal, on March 9, 2021, ESC filed a complaint against
15   Insomniac in the Central District of California. *See* C.D. California Compl., ECF No. 1.
16   In its new complaint against Insomniac in this case, ESC presented 16 examples of
17   breach by Insomniac, including relating to *Marvel Spider-Man* (for PlayStation 4), *Spyro*,
18   *Ratchet & Clank*, *Resistance*, and *Sunset Overdrive*. *Id.* ¶¶ 18–60. The allegations and
19   claims relating to *Spyro*, *Ratchet & Clank*, *Resistance*, and *Sunset Overdrive* merchandise
20   were all new, meaning they were not previously asserted in the Nevada Action. *Compare*
21   C.D. California Compl. 18–80 *with* Nevada Compl. ¶¶ 96–101. ESC also brought
22   separate claims for breaches of the Procurement Agreement and Fulfillment Agreement

---

² *See* Exhibit C to the Request for Judicial Notice.

³ Sony and Insomniac are both represented by the same counsel at Rimon Law.

⁴ *See* Exhibit F to the Request for Judicial Notice.

⁵ *See* Exhibits D and E to the Request for Judicial Notice.

⁶ *See* Exhibit G to the Request for Judicial Notice.

instead of the one claim in the Nevada Action. *Compare* C.D. California Compl. ¶¶ 61–70 *with* Nevada Compl. ¶¶ 129–134. Taken together, ESC's complaint in this case is different because it has different underlying facts that establish Insomniac's breaches, as well as an additional claims for relief.

### III.　ARGUMENT

**1.　Legal standard**

Rule 41(d) states:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court: (1) may order the plaintiff to pay all or part of the costs of that previous action; and (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d).

Rule 41(d) conveys "broad discretion" on federal courts to order stays and payment of costs, *but neither order is mandatory*. *Esquivel v. Arau*, 913 F. Supp. 1382, 1386 (C.D. Cal. 1996) (citations omitted) (emphasis added). "[T]he court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d), and whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant." *Id*. Rule 41(d) is "intended to serve as a deterrent to forum shopping and vexatious litigation." *Id*. at 1386 (quoting *Simeone v. First Bank Nat'l Ass'n*, 971 F.2d 103, 108 (8th Cir. 1992)).

The Ninth Circuit has not addressed whether attorneys' fees are included in Rule 41(d)'s "costs," and this Court has frequently denied attorneys' fees. *See Data Scape Ltd. v. Spotify USA Inc.*, 2019 WL 7905898, at *5 (C.D. Cal. Dec. 3, 2019); *Pereira v. 3072541 Canada Inc.*, 2018 WL 5824889, at *2 (C.D. Cal. July 5, 2018); *Sleep No. Corp. v. Sizewise Rentals*, No., 2018 WL 5263064, at *3–4 (C.D. Cal. June 26, 2018); *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Assoc.*, 2016 WL 11506718, at *4 (C.D. Cal. Oct. 31, 2016). Under Rule 41(d), the only costs recoverable are fees from the preparation of work product rendered useless by the dismissal of the previous action. *Data Scape Ltd.*, 2019 WL 7905898, at *5 (citing *Esquivel*, 913 F. Supp. at 1388). Thus,

1 courts limit the award of attorneys' fees and will not impose an award for costs
2 associated with work that will still be useful to the defendants in the second litigation. *Id.*;
3 *Esquivel*, 913 F. Supp. at 1388.

**2.    The court should deny Insomniac's motion for costs because ESC acted reasonably and legitimately and did not engage in vexatious litigation or forum shopping.**

The analysis of Rule 41(d) is two parts. First, "the court should simply assess whether a plaintiff's conduct satisfies the requirements of Rule 41(d)" by filing a subsequent action based on or including the same claim against the same defendant. *Id.* at 1388; Fed. R. Civ. P. 41(d); *Sleep No. Corp.*, 2018 WL 5263064, at *3. Second, the court should determine whether the circumstances of the case warrant an award of costs to prevent prejudice to the defendant from forum shopping and vexatious litigation. *Esquivel*, 913 F. Supp. at 1388.

**A.    Filing a subsequent action that includes the similar claims against the same defendant alone is insufficient to recover costs under Rule 41(d).**

Insomniac argues that ESC's conduct satisfies the requirements of Rule 41(d) because this case was based on or included the causes of action in the Nevada Action. Insomniac's Motion for Fees, ECF No. 51 at 5. Insomniac's support for this argument is that in *Esquivel* the court found the fact that the "operative facts alleged are essentially the same" to be a relevant factor in determineing to award cost and fees. *Id.* at 6. Insomniac's entire argument is based solely on *Esquivel*, which ultimately was decided on nonanalogous facts that Insomniac's motion does not discuss. *See* 913 F. Supp. 1382 (C.D. Cal 1996). Insomniac's argument is unavailing because *Esquivel* is inapposite to ESC's actions here, and ESC's conduct in filing this case does come close to the level of vexatiousness required to award costs under Rule 41(d). Insomniac's analysis never addresses whether ESC engaged in forum shopping or vexatious litigation.

"Simply refiling the same claim in a separate court, without more, does not rise to the level of vexatious litigation." *Sleep No. Corp*, 2018 WL 5263064, at *2 (citing

1  *Lennard v. Yeung*, 2011 WL 13217925, at *7 (C.D. Cal. Aug. 16, 2011)). Courts
2  repeatedly find that the technical and procedural process of filing a second case with the
3  same causes of action does not alone rise to the level of vexation litigation required to
4  award costs under 41(d). *Id.*; *Sleep No. Corp*, 2018 WL 5263064, at *2 (denying costs
5  under 41(d) on finding no evidence of vexatious litigation although plaintiff's second case
6  was based on or included the same claims); *Barnes & Noble, Inc. v. LSI Corp.*, 823 F.
7  Supp. 2d 980, 992 (N.D. Cal. 2011) (finding no evidence of forum shopping or vexatious
8  litigation where the plaintiff simply filed suit in their chosen forum rather than the
9  defendant's chosen forum, and the defendant made no showing of different substantive
10 law that would motivate forum shopping). Thus, evidence of filing a second suit alone
11 does not automatically satisfy the requirements to award costs under Rule 41(d).

12       Insomniac's argues that ESC's two complaints in the Nevada Action and this case
13 have the same claims for relief. But what *Esquivel* actually teaches is that a defendant is
14 entitled to fees if the plaintiff is forum shopping or acting in a vexatiously litigious
15 manner. In *Esquivel*, the plaintiff first filed two actions with fourteen causes of action in
16 New York involving the same transactions and parties in New York state court and the
17 Southern District of New York. *Esquivel*, 913 F. Supp. at 1384. Neither the plaintiff nor
18 the defendant resided in the state of New York and none of the actions took place in New
19 York. *Id.* at 1387. The Southern District of New York case included additional claims of
20 copyright infringement and two claims for declaratory judgment but otherwise had
21 similar pleadings. *Id*. at 1385. Both sides stipulated to a stay of the state court case
22 pending the federal case, and the defendants subsequently filed a motion to dismiss in the
23 federal case. *Id*. The plaintiff filed an amended complaint, and the defendants *again* filed
24 a motion to dismiss based on lack of personal jurisdiction and improper venue. *Id*.

25       Following the second motion to dismiss but before the opposition was due, the
26 plaintiff filed a second lawsuit in the Central District of California with the same parties
27 and claims, as well as with additional claims of constructive fraud, invasion of privacy,
28 commercial misappropriation, and unfair competition. *Id*. On the day before the

plaintiff's opposition to the motion to dismiss was due in the federal New York action, the plaintiff noticed a voluntary dismissal of the federal New York action. *Id*.

Significant to the *Esquivel* court was the vexatious nature of the plaintiff's actions. The plaintiff filed not two, but *three* separate cases in three separate forums: New York state court, the Southern District of New York, and the Central District of California. *Id.* Additionally, the plaintiff only dismissed the defendant *after* the defendant filed its motion to dismiss. *Id. Esquivel* thus illustrates the standard for what is forum shopping and vexatious litigation. *Id.* at 1386–87. The court found evidence of forum shopping and vexatious litigation because the plaintiff's initial choice of forum was "questionable," and the plaintiff's reasons for filing there did not satisfy minimum contacts with the forum. *Id.* at 1387. Additionally, the plaintiff was seemingly avoiding an inevitable dismissal of the case because it waited to dismiss the case until *after* a motion to dismiss was filed. *Id.* It was on these facts that the court found an award under Rule 41(d) appropriate. *Id.* at 1388.

Insomniac makes no argument that ESC engaged in activity that warrants the award of fees (*i.e.*, forum shopping or vexatious litigation) beyond the mere fact that it filed a second lawsuit under the same operative facts and claims. In truth, however, ESC filed this case with similar claims for breach of a written contract, but the underlying facts and allegations of the breach include significantly more facts than alleged in the Nevada Action. Additionally, in this case ESC brought an additional cause of action. Additionally, the facts alleged in this case include more examples of breach and do not contain the "same operative facts regarding violations of the alleged exclusive right to generate merchandise . . . and entire sections" as Insomniac claims. Motion for Fees, at 6.

While ESC acknowledges the similarity in the two cases' claims (*e.g.*, breach of the exclusive license granted to ESC by Insomniac), this fact alone does not merit costs under Rule 41(d). Even with similar causes of action, Insomniac still failed to articulate a clear reason as to how ESC's actions constitute forum shopping or vexatious litigation. Accordingly, Insomniac's motion should be denied.

**B.  The Nevada Action was brought in ESC's home forum and Insomniac was dismissed before any substantive matters took place.**

Courts look at evidence that suggests that the circumstances warrant costs, such as the plaintiff engaging in vexatious litigation or forum shopping. *Esquivel*, 913 F. Supp. at 1387–88; *Sleep No. Corp*, 2018 WL 5263064, at *3. "Forum shopping is … shown when a plaintiff suffers setbacks in one court and dismisses to 'try their luck' somewhere else." *Sleep No. Corp.*, 2018 WL 5263064, at *2 (citation omitted). Filing a suit in a plaintiff's chosen forum rather than the defendant's forum does not show any evidence that a plaintiff was "forum shopping." *Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp. 2d 980, 992 (N.D. Cal. 2011); *Sleep No. Corp*, 2018 WL 5263064, at *2; *see also Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Assoc.*, 2016 WL 11506718, at *4 (C.D. Cal. Oct. 31, 2016).

As explained above, the mere presence of a second case with the same claims for relief and underlying facts does not satisfy the Rule 41(d) requirements. Although Insomniac does not go further in its analysis to support its arguments, ESC did not engage in any activities that were vexatious nor akin to forum shopping.

This case is similar to *Sleep No. Corp. v. Sizewise Rentals, LLC*, 2018 WL 5263064, at *1 (C.D. Cal. June 26, 2018).  The court in *Sleep Number* denied the defendant's motion for costs under Rule 41(d) because although the second action consisted of the exact same facts and claims as the dismissed action, there were no indications of vexatious litigation or forum shopping. *Id.* at *4. The plaintiff in *Sleep Number* originally filed two cases alleging patent infringement in the Northern District of Texas on December 29, 2017. The plaintiff believed that venue was appropriate because it believed the defendants had facilities located in the district. *Id.* at *1. The parties' counsel stipulated to a 30-day extension for defendants to answer the complaint, during which time the defendants began to draft a motion to transfer venue. *Id.* Shortly thereafter, the parties engaged in discussions about the pending motion to dismiss due to faulty venue. *Id.* As it turned out, the defendants no longer had a facility in the Northern

1  District of Texas, so the plaintiff could not establish venue. *Id.* Approximately eight
2  weeks after first filing suit, the plaintiff voluntarily dismissed the lawsuits and refiled in
3  the Central District of California. *Id.* at *2.

4  The court acknowledged that the "technical requirements of Rule 41(d) are met:
5  the plaintiff . . . previously dismissed the Texas actions voluntarily; [plaintiff] then filed a
6  second action . . . 'based on or including the same claims[s]'" of the Texas actions. *Id.* at
7  *3. But the court found nothing else to support an award for costs under Rule 41(d) and
8  thus denied the motion. *Id.* at * 3–4. The defendants argued that the plaintiff knew from
9  the outset that the forum was improper and was attempting to obtain a more favorable
10 forum (*i.e.*, forum shopping) and the plaintiff dismissed the lawsuit just days before the
11 motions were due, incurring costs for legal work that was no longer useful. Even these
12 arguments were unavailing. The court found nothing to support the defendants' argument
13 that the litigation was vexatious or that the plaintiff was forum shopping, so the court
14 denied the Rule 41(d) motion for costs.

15 As in *Sleep Number*, ESC filed its suit in a forum that it initially believed was a
16 proper venue. As alleged in the Nevada Action, a majority of the actions and the breach
17 occurred in the District of Nevada. Under ordinary circumstances, the District of Nevada
18 forum could be proper. In this case, however, it became clear that the parties were bound
19 to the terms of a contract that had a venue provision for the Central District of California,
20 which ESC recognized likely prevented litigating in its selected venue. ESC did not
21 dismiss to "try its luck" in another forum because at the point in which ESC dismissed
22 Insomniac, it was so early in the case that there was no substance that ESC could base
23 this on. ESC stipulated to a motion to extend the time for Insomniac to answer to the
24 complaint. Then two weeks later, ESC voluntarily dismissed Insomniac without
25 prejudice. The plaintiff in *Sleep Number* similarly stipulated to an extension of time to
26 answer the complaint and then dismissed the defendant a couple of weeks later before the
27 response was due. *Id.* at *1. Unlike *Esquivel*, which filed the dismissal *after* amending the
28 complaint once in response to a first motion to dismiss and then a second subsequent

10

1  motion to dismiss, Insomniac did not file any substantive motions during this time, nor
2  did its co-defendant, Sony, which is represented by the same counsel. Like the plaintiff in
3  *Sleep Number*, ESC did not engage in vexatious litigation or forum shopping by
4  dismissing the Nevada Action.

5  Moreover, the District of Nevada was ESC's home forum. Courts hold that filing
6  suit in a plaintiff's chosen forum rather than the defendant's forum does not show any
7  evidence that a plaintiff was forum shopping. *Barnes & Noble, Inc.*, 823 F. Supp. 2d at
8  992; *Sleep No. Corp*, 2018 WL 5263064, at *2. Therefore, by filing the suit in the District
9  of Nevada, ESC was not engaged in forum shopping.

10  In conclusion, without evidence of vexatious litigation or forum shopping, courts
11  do not award costs to the defendant under Rule 41(d). Insomniac fails to point out a
12  single fact that alleges either vexatious litigation or forum shopping because there is
13  none. And while some of ESC's causes of action are similar, the underlying facts ESC
14  alleged in this case are broader than those alleged in the Nevada Action. This fact is not
15  consequential, however, because the presence of similar claims arising from the same
16  facts alone cannot signify costs or fees under Rule 41(d). Therefore, the court should
17  deny Insomniac's motion for fees.

18  **3.  Insomniac should not be awarded its claimed fees incurred from the Nevada**
19  **Action because its fees are not rendered useless by the dismissal, were clerical**
20  **in nature, and were a result of self-imposed and unnecessary litigation.**

21  The only costs recoverable are fees from the preparation of work product rendered
22  useless by the dismissal of the previous action. *Esquivel*, 913 F. Supp. at 1388. Thus,
23  courts limit the award of attorneys' fees and will not impose an award of any fees for
24  costs associated with work that will still be useful to defendants in the second litigation.
25  *Id.* With respect to a Rule 12 motion, because such a motion "would be applicable in any
26  district," a "[d]istrict [c]ourt should not award costs related to [a defendant's] motion to
27  dismiss." *Nuance Commc'n, Inc. v. Abbyy Software House*, 2008 WL 11383775, at *3
28  (N.D. Cal. Sept. 29, 2008). Tasks that are administrative or clerical in nature are non-

compensable because they are "tasks that law firms should absorb as part of overhead expenses." *Cohen v. Aetna Life Ins. Co.*, 2021 WL 2070205, at *9 (C.D. Cal. May 18, 2021) (citing *Missouri v. Jenkins*, 491 U.S. 274, 288, n.10 (1989) (citation omitted)). Furthermore, when costs incurred for work performed in the dismissed case were unnecessary, excessive, self-imposed, or avoidable, courts decline to award costs and fees under Rule 41(d). *See, e.g., Jadwin v. Country of Kern*, 767 F. Supp. 2d 1069, 1105–09 (E.D. Cal. 2011) (finding that courts must guard against awarding fees that are "excessive," "self-imposed," "avoidable," or "otherwise unnecessary").

Although ESC has shown that Insomniac should not be awarded any costs or fees because Rule 41(d) does not apply, it responds to Insomniac's purported fees nonetheless. Insomniac argues that it is entitled to, first, "fees and costs for work on behalf of Insomniac on initial case management prior to ESC's June 1, 2020, dismissal of the first complaint against Insomniac" and, second, "fees and costs for work required after ESC's June 1, 2020 dismissal of the Nevada Action." Motion for Fees, at 7. The Court should reject Insomniac's argument because case law suggests that none of Insomniac's activities support the award of fees and costs.

First, regarding Insomniac's first claims for fees, all of Insomniac's work may be attributed to work that is "administrative in nature" or not rendered "useless." Insomniac explains that it began to prepare to file a motion to dismiss prior to ESC's dismissal. *Id.* However, courts have recognized that preparation for a dismissal is useful and still applicable even in a second subsequent action, as is the case here. As the court is aware, Insomniac filed its motion to dismiss this case on May 13, 2021. Motion to Dismiss, ECF. No. 39. By Insomniac's own allegations in the motion for fees, the underlying facts of the two cases are the same. Motion for Fees, at 2. Therefore, the grounds and reasons prepared for its dismissal would largely remain the same, and thus remain useful. In addition, Insomniac mentions initial case management which includes "preparation of *pro hac vice* petitions and notices of appearance." Motion for Fees, at 7. These actions

are administrative and clerical in nature, which are non-compensable. Taken together, Insomniac is not entitled to its fees under Rule 41(d)(1) for any alleged activity.

Second, Insomniac claims that it is entitled to the fees "necessitated by ESC's refusal to remove allegations against Insomniac from its public complaint" in the Nevada Action. Contrary to Insomniac's self-serving explanation, ESC *agreed* to remove Insomniac from the Nevada Action on the condition that Sony stipulate that such amendment would not constitute ESC's one amendment as a matter of right. Nevada Action, ECF No. 42 at 16–17. ESC pointed this out in its opposition to the motion to strike that Insomniac and Sony filed in the Nevada Action. *See id.* Insomniac rejected ESC's reasonable condition and filed a motion to strike instead, wasting the Court's resources to dispute a moot issue. *Id.* Because ESC agreed to remove Insomniac from the Complaint but Sony refused the condition, this was not a "necessity" as Insomniac asserts, but an unnecessary, excessive, self-imposed, and avoidable cost. And unnecessary, excessive, self-imposed, and avoidable costs are not entitled to fees. Therefore, the Court should deny Insomniac's motion for fees.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Insomniac's Rule 41(d) motion.

DATED: June 21, 2021    MASCHOFF BRENNAN

          By: */s/ Robert Stewart*
            Sterling A. Brennan
            David R. Wright
            Robert T. Stewart
            Maren Laurence
            *Attorneys for Plaintiff ESC-Toy Ltd.*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed and served electronically in compliance with Federal Rule of Civil Procedure Rule 5 and Local Rule

1 | 5-3.2. As such, this document was served on all counsel who have consented to electronic
2 | service on the date of filing.
3
4 | Dated: June 21, 2021           By: /s/ *Robert Stewart*_____
5 |                                              Robert Stewart