Mark L. Eisenhut, Bar No. 185039
  meisenhut@calljensen.com
Scott R Hatch, Bar No. 241563
  shatch@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000

John P. Aldrich (Admitted Pro Hac Vice)
  jaldrich@johnaldrichlawfirm.com
ALDRICH LAW FIRM, Ltd.
7866 West Sahara Avenue
Las Vegas, NV  89117
Tel:   (702) 853-5490

Shoham Segal (Admitted Pro Hac Vice)
  segal@lvnvlegal.com
SHOHAM SEGAL LAW PLLC
1180 North Town Center Drive, Suite 100
Las Vegas, NV  89144
Tel:   (702) 660-6700

Frank F. Sommers IV, Bar No. 109012
  ffs@sommerslawpc.com
SOMMERS LAW PC
227 Princeton Avenue
Mill Valley, CA 94941
Tel: (415) 308-4004

Paul J. Steiner, Bar No. 41117
  paul@sfpaulaw.com
LAW OFFICES OF PAUL J. STEINER
580 California Street, 12th Floor
San Francisco, CA 94104-1033
Tel: (415) 981-6100

Attorneys for Plaintiff, ESC-Toy Ltd.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESC-TOY LTD., a Nevada corporation,<br><br>Plaintiff,<br><br>vs.<br><br>INSOMNIAC GAMES, INC., a California corporation,<br><br>Defendant. | Case No.  2:21-cv-02139-JVS (DSRx)<br><br>**JOINT STATUS REPORT**<br><br>Hon. James V. Selna<br>Hon. Magistrate Daniel S. Roberts |

ESC01-02:4525095_1:7-28-26

JOINT STATUS REPORT

ESC-Toy Ltd. ("Plaintiff" or "ESC") and Defendant Insomniac Games, Inc. ("Defendant" or "Insomniac") (together, the "Parties") submit this Joint Status Report pursuant to the Court's May 4, 2026 Order continuing the Status Conference to August 3, 2026, at 11:00 a.m., and directing the Parties to file a joint status report prior to the hearing. (Dkt. 259.)

**PLAINTIFF'S STATEMENT**

**I. STATUS OF THE SIE ACTION AND LIFTING OF THE STAY IN THIS CASE**

The stay of this action has expired by its own terms. The Court stayed this case "until Sony's assertions against ESC and its counsel in the Northern District Action are resolved." (Dkt. 169 at 1:3–6; see *ESC-Toy Ltd. v. Sony Interactive Entertainment LLC*, No. 3:21-cv-00778-EMC (N.D. Cal.) (the "Northern District Action").) Insomniac itself quoted that condition to this Court. (Dkt. 251 at 6.) The condition has now occurred. On May 14, 2026, the Honorable Edward M. Chen denied in their entirety the dispositive sanctions sought by Insomniac's parent, Sony Interactive Entertainment LLC ("SIE"), holding that "ESC may proceed with its substantive claims against SIE." (**Ex. A** at 2–3.) On July 14, 2026, after conducting his own *in camera* review of Gayner-related document identified on ESC's privilege log, Judge Chen held that all forty-four transactional-period documents contain no litigation taint and "do not fall within the scope of the Protective Order." (**Ex. B** at 3–4.) Nothing remains of the proceedings that occasioned this stay. Note that the Disqualification Protective Order (the "DQ PO"), which was entered in 2014 and is attached as Exhibit D, must be read together with Judge Chen's May 14 and July 14 Orders, which construed its scope and held that forty-four transactional-period documents fall outside it.

That is precisely the outcome this Court was awaiting. At the April 20, 2026 status conference, the Court stated: "It had been my idea to -- or plan to partially lift the stay to deal with the consolidation and conflicts," deferred only because Judge Chen's April 23 session "could have a significant impact on what we do," and twice stated its

intent: "I want to move forward with consolidation, I want to move forward with regard to the potential recusal issues." (Apr. 20, 2026 Status Conf. Tr. at 8:7–15.) The single contingency the Court identified has resolved — decisively, and in ESC's favor.

The law compels the same result. Insomniac, as the proponent of any continued stay, bears the burden of justifying it. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Every *Lockyer* factor favors ESC: this action was filed on March 9, 2021, is in its sixth year with no trial date, and merits discovery has never been completed — damage that compounds with each additional month; "[b]eing required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'"; and the "orderly course of justice" cannot be served by deferring to proceedings that have concluded. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110, 1112 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962)); see *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936). "[S]tays should not be indefinite in nature." *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007). Judge Chen made the point from the bench in the parallel action: "we've now stalled this case for five years" and "we haven't even gotten to first base yet." (Dkt. 538 (Official Tr.) at 20:22–23, 22:5–6.) The same is true here.

The Northern District rulings also unlock evidence that likely bears directly on this case. The parties there are attempting to finalize the release of the cleared documents, and discovery in this case should also proceed expeditiously. Discovery here need not, and should not, wait on that ministerial release of the already cleared documents in the Northern District Action.

ESC respectfully requests that the Court lift the stay and permit discovery to commence without further delay. Insomniac's own most recent request contemplated no more than this: it asked "that the current stay remain in effect until the rescheduled conference." (Dkt. 257 at 2.) That conference is now here. The foregoing description of the Northern District Action is drawn exclusively from its public docket, including the two attached Orders (Exs. A, B); because the June 16, 2026 official transcript remains

JOINT STATUS REPORT

within PACER's 90-day restricted-access period, the cited excerpts are attached as **Exhibit C**.

## II.    PURPORTED CONFLICT OF COUNSEL

Defendant Insomniac (and defendant SIE in the Northern District Action, who are both represented by the same counsel, KXT Law) have pursued a sustained campaign against ESC's counsel Paul Steiner and Frank Sommers, asserting that even though Mr. Steiner and Mr. Sommers have carefully complied with the Protective Order in the Northern District Action, and have committed to Judge Chen to fully comply therewith going forward, that ESC should be deprived of its counsel of choice in these actions.  Moreover, they take statements from Judge Chen completely out of context, and ignore his ultimate conclusion on SIE's request for Judge Chen to disqualify Mr. Steiner and Mr. Sommers:

> I'm not going to impose it yet, the prophylactic measure [disqualifying Mr. Steiner and Mr. Sommers], but you might want to think about that. But it's fair for me to issue the DQPO scope order first so you can see exactly what's in play and what's not in play. So for now, I'm going to reserve judgment on the question of the two attorneys with that warning in mind.

Ex. C, p. 22:20-25.  In other words, Judge Chen has warned ESC that if any of its attorneys in this case obtain documents protected by the Protective Order in the Northern District Action then such attorney could be subject to disqualification at that time.

## III.    CONSOLIDATION

ESC is prepared at the August 3 conference to address a case schedule and consolidation of the related action, and to propose briefing where useful.  That said ESC's position is that the related action should be fully consolidated into this action. Naturally, to the extent applicable (and only to that extent), any prior substantive rulings on the pleadings in this action would apply equally to the related action following consolidation.  Notably, the related action is not attempting to revive any previously dismissed claims.

JOINT STATUS REPORT

**DEFENDANT'S STATEMENT**

For purposes of this Joint Status Report, while Insomniac may disagree with the statements in ESC's position, it will not rebut such statements point-by-point. Instead, to the extent Insomniac has not responded substantively herein to allow for timely filing, it will address any such topics at the August 3, 2026 Status Conference.

**I.    Status Of The SIE Action**

Since the April 20, 2026 status conference in this matter, the parties attended the sealed hearing on the Order to Show Cause proceedings ("OSC") in *ESC-Toy Ltd. v. Sony Interactive Entm't LLC*, No. 21-cv-00778-EMC-DMT (N.D. Cal., 2020) (the "SIE Action"). On May 14, 2026, Judge Chen filed an Order Denying Sanctions and Motion to Modify Protective Order (SIE Action, ECF No. 529). Among other things, that order (1) denied terminating and issue preclusion sanctions, *id.* at 32:11-13; (2) reserved the right to consider evidentiary sanctions if appropriate, *id.* at 34:21; (3) denied ESC's motion to modify the Disqualification Protective Order (the "DQ PO")[1], *id.* at 33:23-25; (4) held that one of the DQ PO's purposes was to "prevent Ms. Gayner's insider knowledge of SIE's litigation strategy and privileged information from flowing back into this case," *id.*; (5) stated that allowing ESC's malpractice counsel to access Gayner materials subject to the DQ PO while representing ESC in the SIE Action "risks creating precisely the cross-contamination the [DQ PO] was designed to prevent," such that if access to the materials is required for the malpractice actions then ESC must "retain counsel in those proceedings who are not also active in [the SIE Action," *id.* at 33:25-34:4; and (6) directed the parties to meet and confer to identify the Gayner documents solely related to transactional advice and determine how they may be used in the SIE Action going forward, *id.* at 34:17-20.

Subsequently, Judge Chen set a status conference for June 16, 2026. SIE Action, ECF No. 532. At the status conference, Judge Chen stated that he would review the narrow set of Gayner transaction taint documents from the 37-page privilege log from

[1] A copy of the DQ PO is attached hereto as Ex. D.

roughly May 2017 to June 2018 for litigation taint. *See* SIE Action, ECF No. 538 at 3:6-9, 11:1-16. Judge Chen also considered the prophylactic measure of removing Messrs. Sommers and Steiner ("Malpractice Counsel") to prevent potential taint, reserving judgment on the issue and warning that breach of the DQ PO would warrant "heavy consequences," including terminating sanctions. *See id.* at 20:3-21:4, 21:21-22:25.

On July 14, 2026, Judge Chen issued an Order Clarifying Scope of [DQ] Protective Order. SIE Action, ECF No. 539. Judge Chen clarified that out of the 62 bates numbered records appearing on the 37-page privilege log, 44 of them were not subject to the DQ PO, 18 were subject to it, as well as all other documents on the privilege log from October 23, 2018 onward ("litigation documents"). *See id.* at 3:26-4:16. The parties are currently negotiating a process concerning the release of the 44 transactional documents, and as SIE understands it, those documents have not been released to either party.

## II.    Conflict Issues

### A.    Malpractice Counsel's Continued Representation

Malpractice Counsel's continued representation of ESC in this case creates risks of violation of the DQ PO in the SIE Action, and Insomniac still does not consent to or otherwise acknowledge that they should be allowed to serve as ESC's counsel here. Malpractice Counsel is also counsel for ESC in the SIE case as well as ESC's General Counsel. *See* SIE Action, ECF No. 513 at 1:10-11.

First, the DQ PO is applicable to this action. The DQ PO states that any counsel representing ESC in the SIE Action is prohibited from (1) contacting or discussing Ms. Gayner's knowledge of SIE-related matters with her, Ex. D at ¶ 1; and (2) accessing documents or information concerning her knowledge of "any SIE-related matters," *id.* at ¶ 2. Moreover, any such documents, Ms. Gayner's testimony, and her declaration filed in the SIE Action are inadmissible if offered by ESC at any trial. *See id.* at ¶¶ 3, 5, 7. Recognizing this, ESC's former counsel, Maschoff Brennan ("MABR"), withdrew from this case, acknowledging that the disqualification order and DQ PO "restricts

Maschoff Brennan's ability to fully represent ESC in this case" and "would hamper [its] ability to fully represent ESC." ECF No. 208 at 2:6-8, 3:3-6.

ESC's litigation conduct further underscores this point. ESC has injected SIE into this action in a manner that necessarily implicates, at a minimum, Ms. Gayner's knowledge of "SIE-related matters." Ex. D at ¶ 2. For example, ESC's initial disclosures reference Ms. Gayner. As another example, ESC served eight RFPs referencing "Sony" or "SIE," including a request for Gayner documents containing SIE or Insomniac information that are subject to the DQ PO. Accordingly, MABR's concerns were well founded, and the DQ PO applies here.

In addition to representing ESC in this case, Malpractice Counsel also represents ESC in its malpractice actions against Ms. Gayner and MABR, where they can be presumed to have access to Gayner materials subject to the DQ PO or, at a minimum, will require access to them as the cases progress. As stated, ESC has represented that these materials are necessary to take depositions, respond to discovery, and prepare for trial in those actions. *See* SIE Action, ECF No. 507 at 3:1, 3:18-21. Likewise, Malpractice Counsel presumably will need to take Ms. Gayner's deposition in the Malpractice Actions. Moreover, those materials extend well beyond information concerning SIE. ESC's privilege log for Ms. Gayner's documents in the Northern District SIE Action references Insomniac 67 times, including entries reflecting "[d]iscussion of potential causes of action and fact-finding for claims against Sony and Insomniac." *See, e.g.*, *SIE Action*, ECF No. 245-13 at 14.

Such documents are "SIE-related materials" under the DQ PO (Ex. D at ¶ 2) and are relevant to the malpractice actions. For example, ESC's case against Ms. Gayner includes allegations that her misconduct severely impacted ESC's claims in this action and "caused [ESC] to suffer substantial delays in this Insomniac litigation, counsel disqualification, increased attorney fees, and compromised strategy position." *ESC-Toy Ltd. v. Shelly Gayner*, No. CV0007202, Compl., ¶ 25(h) (Marin Cnty. Sup. Ct. Aug. 8, 2025). And in the MABR action, ESC asserted that MABR represented ESC against

JOINT STATUS REPORT

Insomniac but failed to advise ESC of the risk of obtaining information from Gayner related to Insomniac. *See ESC-Toy Ltd. v. Maschoff Brennan Gilmore & Israelson, PLLC*, No. 30-2024-01443133-CU-PN-CJC, Compl., ¶¶ 7 and 11 (O.C. Sup. Ct. Nov. 27, 2024). The need for Malpractice Counsel to, at some point, access these documents in the malpractice actions is precisely the type of cross-contamination that concerned Judge Chen, and is the reason why Malpractice Counsel's representation of ESC in the SIE Action is still being addressed.

Likewise, Malpractice Counsel's continued representation of ESC in the Insomniac action threatens the integrity of the judicial process by placing counsel in the untenable position of advancing irreconcilable arguments. In the malpractice actions, counsel must contend that prior counsel's negligence destroyed or substantially impaired ESC's claims in this action. Yet, in this action, the same counsel must argue that those claims remain viable and meritorious. Malpractice Counsel cannot simultaneously maintain both positions without compromising the integrity of the judicial process.

### B.    The New Action (Insomniac II)

The Parties have also not resolved how this case should proceed in relation to *ESC-Toy Ltd. v. Insomniac Games, Inc.*, No. 2:25-cv-12122-GW-AGR (C.D. Cal. 2025) (the "New Action"). Despite ESC's representations, Insomniac has not agreed to consolidation. Insomniac presented its position in the February 11, 2026 Joint Status Report. ECF No. 251 at 7:13-8:12. Insomniac will not stipulate to an unconditional, outright consolidation of this action with the New Action. That said, Insomniac does not oppose consolidation so long as (i) ESC is not permitted to revive claims or theories that this Court has already dismissed with prejudice (*see* ECF No. 140), (ii) any such consolidation is expressly subject to Insomniac's prior motions to dismiss filed in this action (ECF Nos. 36 and 108), this Court's respective orders on the same (ECF Nos. 82 and 140), any future motions to dismiss or for sanctions Insomniac may file, and (iii) after Insomniac makes an appearance in the New Action. *See* ECF No. 251 at 7:13-8:12

(citations omitted) Insomniac's conditions are of particular importance since ESC has admitted in the MABR malpractice action that the alleged malpractice "necessitated retaining new counsel to . . . attempt to ***revive dismissed claims***." *Id.* (citation omitted). The New Action is a clear example of claim-splitting that required seeking leave to amend and is an attempt to circumvent the Court's order dismissing claims with prejudice, among other things. *See id.*; *see also* ECF No. 251-1. Regardless of the fact that this conduct is consistent with ESC's pattern and practice of improperly attempting to assert a plethora of claims into ongoing actions after Malpractice Counsel appeared[2], the issues raised in the Parties' prior Joint Status Report remain unresolved. *See generally* ECF No. 251.

Dated:  July 28, 2026          CALL & JENSEN
                               A Professional Corporation
                               Mark L. Eisenhut
                               Scott R. Hatch

                               By:*/s/ Scott R. Hatch*
                                     Scott R. Hatch

                               Attorneys for Plaintiff ESC-Toy Ltd.


Dated:  July 28, 2026          KXT Law, LLP

                               By:*/s/ Karineh Khachatourian*
                                     Karineh Khachatourian

                               Attorneys for Defendant Insomniac Games, Inc.

---

[2] *See, e.g.*, *JPMorgan Chase Bank, NA v. ESC-Toy Ltd.*, No. A-22-852607-C, Dkt. No. 134 (Nev. 8th Jud. Dist. Ct. June 12, 2026) (denying ESC's motion for leave to add 14 new counterclaims).

JOINT STATUS REPORT

Pursuant to Civil L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated:  July 28, 2026                    By:  */s/ Scott Hatch*

Scott Hatch
Attorneys for Plaintiff ESC-Toy Ltd.

JOINT STATUS REPORT